IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GABRIEL J. VALENZUELA,

     Plaintiff,

v.                                    No. 1:21-cv-746 RB/KRS

MARK BELL,

     Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Defendant Mark Bell's ("Officer Bell")
*Martinez*[1] Report (Doc. 47) and accompanying Motion for Summary Judgment (Doc. 48), filed
November 10, 2022. Plaintiff Gabriel Valenzuela filed a variety of documents in response,
including a self-styled "Martinez Report" (Doc. 53) and multiple letters (Docs. 51, 54, 55, 56, 57).
The Court construes these documents collectively as Plaintiff's response to Officer Bell's *Martinez*
Report and motion for summary judgment.

Also pending before the Court are three motions filed by Plaintiff: (1) a motion requesting
certain video evidence, filed November 22, 2022 (Doc. 49); (2) a motion seeking Officer Bell's
background records, filed November 23, 2022 (Doc. 50), to which Officer Bell filed a response in
opposition (Doc. 52); and (3) a motion seeking case details, filed April 24, 2023 (Doc. 58).

United States Senior District Judge Robert C. Brack referred this case to me to conduct
hearings, if warranted, and to perform any legal analysis required to recommend to the Court an
ultimate disposition. (Doc. 18). Having considered the parties' submissions, the relevant law, and
the record in this case, I recommend that the Court grant Officer Bell's motion for summary

---

[1] *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978).

1

judgment (Doc. 48) due to Plaintiff's failure to exhaust his administrative remedies. I further recommend that the Court deny Plaintiff's motions (Docs. 49, 50, 58), and dismiss this case without prejudice.

## I.   BACKGROUND

On August 26, 2021, Plaintiff pled guilty in the Seventh Judicial District Court for the State of New Mexico to three counts of residential burglary, attempt to commit aggravated burglary, attempt to commit receiving stolen property, two counts of larceny (over $2500), larceny (over $500), and two counts of battery upon a peace officer.[2] *See State of New Mexico v. Valenzuela*, Nos. D-725-CR-2018-193, D-725-CR-2019-109, D-725-CR-2019-111, D-725-CR-2021-71, D-725-CR-2021-72, D-725-CR-2021-73. Plaintiff is presently serving his sentence at Southern New Mexico Correctional Facility. (*See* Doc. 59).

Plaintiff, proceeding *pro se*, filed this federal lawsuit in August 2021, raising claims under 42 U.S.C. § 1983 and the Eighth Amendment. (*See* Doc. 1 at 1, 4). Plaintiff's claims in this case stem from a physical altercation that occurred on November 26, 2020, while Plaintiff was being held at Socorro County Detention Center ("SCDC"). (*Id.*). In his complaint, Plaintiff described the physical altercation as follows: At approximately 6:15 p.m. on November 26, 2020, inmates in Plaintiff's unit were receiving haircuts. (*Id.* at 3). Plaintiff asked Officer Bell whether the inmates who received haircuts could get clean uniforms. (*Id.*). Officer Bell denied the uniform request and asked Plaintiff to "cuff up." (*Id.*). Plaintiff argued with Officer Bell about the uniform issue, but

---

[2] The Court has reviewed the official record in Plaintiff's state court proceedings through the New Mexico Supreme Court's online Secured Odyssey Public Access (SOPA). The Court takes judicial notice of the official New Mexico court records in Plaintiff's state criminal cases. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining that the Court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand); *Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) (unpublished) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed. R. Evid. 201).

claims he eventually agreed to be placed in handcuffs. (*Id.*). Plaintiff alleges Officer Bell "twisted [Plaintiff's] pinkie [sic] finger twice" while attempting to place the handcuffs, after which Plaintiff refused to cuff up. (*Id.*). A physical struggle then ensued between Plaintiff and Officer Bell. (*Id.*). A second detention officer, Damion Ibarra, also became involved in the physical struggle when he arrived to assist Officer Bell. (*Id.*). About "a minute or so in to the altercation," Plaintiff alleges Officer Bell hit him in the face three or four times with a closed fist, and then sprayed Plaintiff twice with pepper spray in the face. (*Id.*). At this point, Plaintiff states he became compliant and the officers were able to place him in cuffs. (*Id.*). Officer Bell then escorted Plaintiff through the pod to a closed door. (*Id.*) As they waited for the door to open, Plaintiff alleges Officer Bell "press[ed] and push[ed] [Plaintiff's] head in . . . while he twisted and bent [Plaintiff's] wrist and hands with his hand and [the] cuffs." (*Id.*) Plaintiff then turned around and spit on Officer Bell, after which Officer Bell hit Plaintiff again with a closed fist. (*Id.*). Plaintiff was then taken to a SCDC lockdown pod and offered medical treatment. (*Id.* at 3, 6).

Later that evening, Plaintiff claims he asked SCDC detention officers for permission to leave his cell and go to a jail kiosk to file an informal complaint and grievance against Officer Bell. (*Id.* at 3). Plaintiff alleges his request was denied, with the detention officers allegedly citing security concerns. (*Id.* at 3–4). The following morning at approximately 6:00 a.m., Plaintiff alleges he was transported from SCDC to Central New Mexico Correctional Facility (CNMCF). (*Id.*). Plaintiff states he tried to report the SCDC incident to CNMCF officials, but they told him to talk to a lawyer or file a lawsuit because "CNMCF informal and formal releif [sic] prossas [sic] was only to handle CNMCF issues." (*Id.* at 6–7).

## II.  PROCEDURAL HISTORY

Plaintiff named SCDC and Officer Bell as defendants in his complaint, against whom he seeks $1.6 million in monetary damages. (*Id.* at 1–2, 6). After reviewing Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), the Court dismissed Plaintiff's claims against SCDC with prejudice. (*See* Doc. 15 (determining that Plaintiff failed to state a claim against SCDC because prisons and jail facilities are not "persons" subject to suit for money damages under § 1983)). Plaintiff's claim against Officer Bell survived review. (*Id.*). The Court directed Officer Bell to file an answer to Plaintiff's complaint. (*Id.* at 1). After Officer Bell filed an answer (Doc. 38), the Court ordered Officer Bell to file a *Martinez* Report. (Doc. 43). Officer Bell concurrently filed his *Martinez* Report (Doc. 47) and motion for summary judgment. (Doc. 48). In response, Plaintiff filed a series of documents, including a self-styled "Martinez Report" (Doc. 53) and multiple letters (Docs. 51, 54, 55, 56, 57). The Court construes these documents collectively as Plaintiff's response to Officer Bell's *Martinez* Report and motion for summary judgment.

Officer Bell's *Martinez* Report includes: (1) a video recording of the incident; (2) incident reports prepared by Officer Bell and Officer Ibarra; (3) an EMS service report for medical treatment Plaintiff was offered after the incident; (4) Plaintiff's jail transfer records; (5) state court filings in connection with Plaintiff's transfer from SCDC to CNMCF; and (6) affidavits from Officer Bell, Officer Ibarra, and Eddie Garcia, who is the administrator for SCDC. (*See* Docs. 47-1 to -3). The Court will discuss these items as necessary in its analysis.

In addition to the documents Plaintiff filed in response to Officer Bell's *Martinez* Report and summary judgment motion, Plaintiff has moved for disclosure of certain video evidence and Officer Bell's background records. (*See* Docs. 49, 50). Plaintiff has also filed a motion seeking case details. (*See* Doc. 58).

4

### III.  LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In ruling on a summary judgment motion, the Court may neither make credibility determinations nor weigh the evidence. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation marks omitted).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted). A *Martinez* report is also treated as an affidavit, and this report can be used in determining whether to grant summary judgment if it is "supported by affidavits or other materials provided under oath." *Id.* at 1110, 1111 (citations omitted). A court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings when the plaintiff has presented conflicting evidence. *Id.* at 1111. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006).

As with all pleadings filed by *pro se* parties, the Court must liberally construe the allegations contained in Plaintiff's pleadings. *Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Court must apply the same legal standards applicable to pleadings drafted by counsel. *Id.*

## IV.   OFFICER BELL'S MOTION FOR SUMMARY JUDGMENT

Officer Bell raises two arguments in his motion for summary judgment. First, Officer Bell contends that Plaintiff's complaint is barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because Plaintiff failed to exhaust his administrative remedies before filing suit. (*See* Doc. 48 at 3–4). Second, Officer Bell argues he is entitled to qualified immunity. (*Id.* at 4–8). As set forth more fully below, I recommend finding that Plaintiff's claims are unexhausted and therefore barred by the PLRA.

### A.  Exhaustion of Administrative Remedies

The PLRA prohibits an inmate "confined in . . . jail, prison, or other correctional facility" from bringing an action "with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Sayed v. Page*, 851 F. App'x 842, 844 (10th Cir. 2021) (quoting *Porter*, 534 U.S. at 524).

"Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *See Johnson v. Pettigrew*, 2022 WL 17333074, at *3 (10th Cir. Nov. 30,

2022) (quoting *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010)). "The level of detail necessary in a grievance to comply with the [prison's] grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Absent a specific administrative directive, 'a grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *McGowan v. Huddleston*, 835 F. App'x 314, 317 (10th Cir. 2020) (internal citation omitted).

The PLRA, however, "only requires the exhaustion of administrative remedies 'as are available.'" *Johnson*, 2022 WL 17333074, at *3 (quoting 41 U.S.C. § 1997e(a)). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250. The Supreme Court has identified "'three kinds of unavailability': (1) when a procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when 'an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Sanchez v. Corizon Health, Inc.*, 2022 WL 4857122, at *4 (10th Cir. Oct. 4, 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense, *Jones*, 549 U.S. at 216, and the defendant "bear[s] the burden of asserting and proving that the plaintiff did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). If the defendant makes the required showing, then the burden shifts to the plaintiff "to show that remedies were unavailable to him." *Id.*

At the time of the alleged incident, SCDC had in place an Inmate Grievance Policy that outlined the procedural rules and deadlines governing the grievance process. (*See* Doc. 47-3 at 4–6). The grievance process consisted of three primary phases: (1) an informal phase where complaints are "resolved through direct contact with the staff responsible for the particular problem area"; (2) a formal phase that requires an inmate to file a written grievance, on a designated grievance form, within seven days of the alleged incident, after which the facility grievance coordinator conducts an investigation and renders a written decision; and (3) an appeal stage that requires the inmate to appeal the grievance coordinator's written decision to the facility administrator within five days of receipt of the decision. (*Id.*) SCDC also had a detainee handbook, which specified that grievances are to be "handled through the chain of command" and a detainee "must attempt to have [his/her] issue resolved at the lowest level possible." (*Id.* at 3). The handbook further instructed inmates to obtain grievance forms from the floor officer or submit a grievance "in the Kiosk system in each Pod." (*Id.*).

In this case, it is undisputed that Plaintiff did not exhaust the grievance process in place at SCDC. According to SCDC administrator Eddie Garcia, SCDC "has no record of a grievance submitted by [Plaintiff] related to the incident of November 26, 2020 involving [Officer] Bell." (Garcia Aff. ¶ 6 (Doc. 47-3 at 2)). In his complaint and subsequent unsworn filings, Plaintiff admits that he did not file a grievance in connection with the incident. (*See, e.g.*, Doc. 1 at 3, Doc. 53 at 1). Plaintiff, however, argues that his failure to exhaust should be excused on the basis that SCDC's grievance process was unavailable to him. Plaintiff specifically alleges his request to use the kiosk system was denied the evening of the incident and he was then transferred to a different facility the following morning, thereby making SCDC's grievance procedures unavailable to him.

Plaintiff's unavailability argument lacks merit. Critically, Plaintiff has not presented any evidence to support his assertion that he was transferred from SCDC the morning after the incident. To the contrary, the record evidence shows otherwise. Filings in Plaintiff's then-pending state court criminal cases indicate that SCDC administrative officials waited until December 1, 2020, to file a motion seeking court approval for Plaintiff's transfer from SCDC to CNMCF due to the incident involving Plaintiff and Officer Bell. (*See* Doc. 47-1 at 89–90). Although the state court granted the motion that same day, Plaintiff's jail records indicate that he was not transferred from SCDC until December 4, 2020 -- approximately eight days after the incident. (*Id.* at 77, 87–88). Notably, Plaintiff signed the SCDC report that was issued at the time of his transfer on December 4, 2020. (*Id.* at 87–88 (showing transfer date of "12/04/2020 07:25" with a report print time of "12/04/2020 07:26")). Plaintiff has not presented any evidence to dispute these transfer records. Plaintiff's bare assertion that he was transferred the morning after the incident are plainly insufficient to create a disputed issue of fact. *See Fitzgerald*, 403 F.3d at 1143 (conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact).

Additionally, even if the Court were to accept as true Plaintiff's contention that officers initially denied his request to use the kiosk system the evening of the incident, Plaintiff has not offered an explanation as to why he did not file a grievance during the remaining time he was at SCDC. Under SCDC's Inmate Grievance Policy, Plaintiff had seven days from the date of the incident to timely file a written grievance. The undisputed evidence is that Plaintiff was at SCDC for those seven days. Because Plaintiff has not presented any evidence indicating that SCDC officials prevented, thwarted, or hindered any of his efforts to pursue the grievance process during his remaining time at SCDC, Plaintiff has failed to meet his burden of establishing that the

grievance process was unavailable to him. *See Spotts v. Carter*, No. 21-cv-842, 2022 WL 1203218, at *9 (D. Colo. Apr. 22, 2022) (finding plaintiff had not demonstrated that the administrative process was unavailable to him because he failed to "explain how the denial of his requests for Administrative Remedy forms on a single day, March 15, 2021, prevented him from exhausting his administrative remedies altogether at any other time."); *Huffman v. Allred*, No. 11-cv-1459, 2013 WL 424779, at *6 (D. Colo. Jan. 10, 2013) (finding plaintiff failed to meet his burden of establishing unavailability because "[e]ven if he could not submit grievances while under lock-down, he was free to submit grievances at all other times. His vague assertions regarding the time he was on lock-down are insufficient to show he was effectively prevented from filing grievances.").

Based on the foregoing, I recommend the Court grant Officer Bell's motion for summary judgment on the basis that Plaintiff has failed to exhaust his administrative remedies, as required by the PLRA. As such, the Court need not consider Officer Bell's qualified immunity argument.

## V.   PLAINTIFF'S MOTIONS

Because Plaintiff's claims are barred by the PLRA, this case is subject to dismissal without prejudice. *See Sanchez v. Corizon Health, Inc.*, 2022 WL 4857122, at *4 (10th Cir. Oct. 4, 2022) ("Generally, courts should . . . dismiss . . . unexhausted claims without prejudice.") (internal citation and quotation marks omitted). Accordingly, I recommend denying Plaintiff's motions (Docs. 49, 50, 58) seeking video evidence, Officer Bell's background records, and case details.

## VI.   RECOMMENDATION

For the reasons set forth above, I recommend that the Court grant Officer Bell's motion for summary judgment (Doc. 48) due to Plaintiff's failure to exhaust his administrative remedies. I

further recommend that the Court deny Plaintiff's motions (Docs. 49, 50, 58), and dismiss this case

without prejudice.

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE